# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| OCONEE REGIONAL HEALTH | ) | |
| SYSTEMS, INC., *et al.*,[1] | ) | Case No. 17-51005-AEC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING AND TO USE CASH COLLATERAL

Comes now Guy G. Gebhardt, the Acting United States Trustee for Region 21, in furtherance of his administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a) and files this limited objection to Debtors' motion for authority to obtain post-petition financing and use cash collateral (the "Financing Motion") [Doc. No. 29] and in support thereof states as follows:

1. Pursuant to 28 U.S.C. § 586(a)(3) and (8), the United States Trustee's duties include supervising the administration of chapter 11 cases. The United States Trustee files this objection in furtherance of his duties and responsibilities pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307.

2. On May 10, 2017, **OCONEE REGIONAL HEALTH SYSTEMS, INC.,** ***et al.*,**[1] (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code,

---

[1] The last four digits of the employer identification number for each of the Debtors follow in parenthesis: (i) Oconee Regional Health Systems, Inc. (9394), (ii) Oconee Regional Medical Center, Inc. (9398), (iii) Oconee Regional Health Services, Inc. (9397), (iv) Oconee Regional Emergency Medical Services, Inc. (3857), (v) Oconee Regional Health Ventures, Inc.(sometimes d/b/a Oconee Neurology Services) (8516), (vi) Oconee Internal Medicine, LLC (1712), (vii) Oconee Orthopedics, LLC (3694), (viii) ORHV Sandersville Family Practice, LLC (1236), and (ix) Oconee Regional Senior Living, Inc. (5613). The Debtors' corporate mailing address is 821 North Cobb Street, Milledgeville, Georgia, 31061.

Title 11 U.S.C. § 101 et seq.

    3.      On May 11, 2017, the Debtors filed the Financing Motion.

## Patient Care Ombudsman

    4.      The United States Trustee submits that in a hospital case such as this, patient care is of most importance when considering the Debtors' budget and operational expenses.

    5.      Congress added several provisions to the Bankruptcy Code in 2005 that were intended to protect patients' interests in bankruptcies involving health care businesses by mandating that the court appoint a patient care ombudsman or "patient advocate." *See Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. No. 109–8*, § 1101(a)(2) (2005), reprinted in 2005 U.S.C.C.A.N. (119 Stat.) 23, 189 (codified at 11 U.S.C. § 333).

    6.      Section 333 of the Bankruptcy Code provides:

> If the debtor in a case under chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case. 11 U.S.C. § 333(a)(1) (2006). *See In re Smiley Dental Arlington*, PLLC 503 B.R. 680, 684 -685 (Bkrtcy.N.D.Tex.,2013)

    7.      Bankruptcy Code Section 333(a)(1) makes the appointment of a patient care ombudsman mandatory "unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients." 11 U.S.C. § 333(a)(1). This inquiry is on a prospective basis, "indicating that [Congress] was concerned with appointing patient care ombudsman in cases where health care businesses seeking bankruptcy protection are currently engaged in the ongoing care of patients." *In re Banes*, 355 B.R. at 535.

8.     According to *Collier on Bankruptcy*, "[t]his ombudsman is, apparently, to serve as a 'patient advocate'—one who can speak for the consumers of the health care business's services who might have different interests than those of the health care business's creditors—monitoring the quality of patient care, representing the interests of patients and reporting to the bankruptcy court every 60 days on the status of patient care in the debtor's health care business." 3 *Collier on Bankruptcy,* § 333.01 (Matthew Bender 15th Ed. Rev.2005). *See In re Genesis Hospice Care LLC* 2009 WL 467265, 3 (Bkrtcy.N.D.Miss.) (Bkrtcy.N.D.Miss., 2009).

9.     An independent ombudsman is required not only to monitor the quality of patient care and to report to the Court, but to warn the Court if patient care is declining or being compromised. There is no other party in this case that can fill this role.

10.    The debtor must be subject to additional scrutiny under § 333(a)(1) because its financial situation is one which required a bankruptcy filing and therefore puts patients at greater risk. An inherent tension exists between a health care business and its patients rising to the level of a conflict of interest when the health care business slips into bankruptcy; and if left to its own devices, a health care business in bankruptcy may not provide comprehensive, safe, and effective care to its patients absent the oversight of an ombudsman appointed pursuant to § 333(a)(1).

11.    However well-qualified the debtor's in-house monitors may be, the employees of the debtor do not have an undivided loyalty to patient interests and are plainly not 'disinterested' under the Bankruptcy Code's definition.

12.    The Debtors state in the Financing Motion that Oconee Regional Medical Center provides acute care and skilled nursing services. The hospital has 140 beds for general acute care patients and 15 beds in its skilled nursing unit. According to the Financing Motion, over the last twelve months, the hospital had approximately 2,600 inpatient admissions with average

length of stay of 3.9 days, over 2,100 skilled nursing patient days, and over 33,000 emergency room visits. In addition to the hospital, the Debtors also operate two wholly-owned clinics and one majority-owned outpatient clinic.

13. On May 16, 2017, the Court entered an order directing the U.S. Trustee to appoint a patient care ombudsman with the appointment to be made no later than June 1, 2017, unless an objection is filed.

14. In the budget attached to the Financing Motion, the Debtors have not provided a line item for the expenses of a patient care ombudsman.

15. The United States Trustee respectfully submits that the Debtors' budget is inadequate in that it does not provide for ombudsman expenses. Based on information the United States Trustee has been able to obtain to this point, a line item for an ombudsman of $2,500 per week should be reasonable over the course of the 19 weeks included in the budget attached to the Debtors' motion. A view of the Debtors' budget attached to the motion shows a line item for Debtors' Attorney Fees expenses totaling $852,000, as projected over the course of 19 weeks, which calculates out to a cost to the estate of approximately $44,842 per week for attorney fees. The total projected expense over 19 weeks for a patient care ombudsman at $2,500 per week would be $47,500.

## Quarterly Fees

16. Pursuant to 28 U.S.C. § 1930, a debtor is obligated to pay quarterly fees to the United States Trustee for each quarter (including any fraction thereof) until the closing of the case.

17. Quarterly fees are calculated by totaling reported disbursements for the four calendar quarters ending on March 31, June 30, September 30 and December 31 according to the

fee schedule provided in the United States Trustee Operating Guidelines and Reporting Requirements (Exhibit "A").

18.    In the budget attached to the Financing Motion, the Debtors provide only a $20,000 line item for the expenses of quarterly fees owed to the United States Trustee.

19.    The United States Trustee respectfully submits that the amount allocated for quarterly fees in the budget attached to Debtors' Financing Motion is inadequate. Based on disbursements totaling $9.2 million for Oconee Regional Medical Center (ORMC) as projected in the Debtors' budget through June 30, 2017, the United States Trustee calculates that the total amount of fees for 2nd quarter 2017 would be $13,000 for ORMC alone. However, there are eight other debtors, each of which will trigger at least the minimum fee of $325 per quarter, totaling $2,600 for each quarter. Therefore, the total quarterly fees for all nine debtors for 2nd Quarter 2017 would be an estimated $15,600.

20.    According to the budget, the total disbursements from July 1, 2017 through September 15, 2017 for ORMC are projected to be $12.3 million. Additionally, the Debtors anticipate a sale of substantially all assets and distributions will be made from those sale proceeds. According to the Debtors' Motion to Sell [Doc. No. 12], the "Purchase Price" is $12 million and the sale is projected to occur in 3rd quarter of 2017. This means the total disbursements for 3rd quarter 2017 would be at least $24.3 million dollars, triggering a quarterly fee of $20,000. Optimistically, if the purchase price at auction is at least $17 million, then quarterly fees for 3rd quarter 2017 would be at least $30,000 for ORMC. As stated above, the other eight debtors would still trigger another $2,600 minimum. This puts the 3rd Quarter total at $32,600.

21.    Based on all of the above, the United States Trustee submits that a budget

allocation for quarterly fees through September 15, 2017 should be raised from $20,000 to $48,200.

## Conclusion

22.     For the foregoing reasons, the United States Trustee submits that there should be a line item for ombudsman expenses in the debtors' proposed budget.

23.     Additionally, the United States Trustee submits that the line item for quarterly fee expenses should be increased to more adequately reflect an accurate fee amount for anticipated distributions from operations and proceeds from proposed sale of the Debtors' assets.

24.     The United States Trustee reserves the right to supplement this objection as deemed necessary and appropriate.

WHEREFORE, the United States Trustee requests that this limited objection be considered, that Debtors' Financing Motion be denied unless and until the proposed budget is amended to reflect a line item for a patient care ombudsman and to reflect a more significant and accurate line item for quarterly fees.

Date:  May 22, 2017.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | GUY G. GEBHARDT<br>ACTING UNITED STATES TRUSTEE,<br>REGION 21 |
|  | /s/ Robert G. Fenimore |
| Office of the U.S. Trustee | Robert G. Fenimore |
| 440 Martin Luther King Jr. Blvd, Ste. 302 | Trial Attorney |
| Macon, GA   31201 | GA Bar No. 205202 |
| (478) 752-3545 | robert.g.fenimore@usdoj.gov |

in bankruptcy.  Payment of all fees which are due and owing must be made before the effective date of a plan of reorganization.  The quarterly fee is calculated by totaling the debtor's disbursements as reported on the operating reports for the three calendar quarters ending on March 31, June 30, September 30, and December 31 according to the following table.  A minimum fee of $325 is due even if there are no disbursements during a calendar quarter.  There is no proration of the fee:

| TOTAL QUARTERLY DISBURSEMENTS | QUARTERLY FEE OWED |
|---|---|
| $         0.00 to        14,999.99 | $        325.00 |
| $   15,000.00 to        74,999.99 | $        650.00 |
| $   75,000.00 to      149,999.99 | $        975.00 |
| $ 150,000.00 to      224,999.99 | $     1,625.00 |
| $ 225,000.00 to      299,999.99 | $     1,950.00 |
| $ 300,000.00 to      999,999.99 | $     4,875.00 |
| $ 1,000,000.00 to   1,999,999.99 | $     6,500.00 |
| $ 2,000,000.00 to   2,999,999.99 | $     9,750.00 |
| $ 3,000,000.00 to   4,999,999.99 | $   10,400.00 |
| $ 5,000,000.00 to 14,999,999.99 | $   13,000.00 |
| $ 15,000,000.00 to 29,999,999.99 | $   20,000.00 |
| $ 30,000,000.00 or more | $   30,000.00 |

Quarterly fees are due no later than one month following the end of each calendar quarter.  Failure to pay quarterly fees may result in the dismissal of the case or conversion to a chapter 7 liquidation case.  Delinquent quarterly fees will be assessed interest until paid even if the case is dismissed.  The debtor will receive a statement from the Executive Office for United States Trustees, Washington, D.C. for each calendar quarter prior to the payment due date. These statements are only estimates based on financial information previously provided by the debtor to the United States Trustee.  The debtor is responsible for calculating the correct quarterly fee amount.  A check for the quarterly fee, made payable to "United States Trustee," should be mailed with the tear-off quarterly fee payment stub of the statement form to:

**U.S. Trustee Payment Center**
**P.O. Box 530202**
**Atlanta, GA 30353-0202**

The address shown above is a lockbox at a bank.  It may not be used for service of process, correspondence, or for any purpose other than payment of quarterly fees.  Only the quarterly fee payment along with the quarterly fee tear-off payment stub provided to the debtor should be sent to the above lockbox address.  Any other correspondence or documents sent to the lockbox will be destroyed.  The completed quarterly fee disbursement stub provided with the statement should be sent to the identified U.S. Trustee field office in the window envelope along with the address stub if an address correction is needed.

The debtor is responsible for timely payment of the quarterly fee.  Failure to receive a statement from the Executive Office for United States Trustees does not excuse

# **CERTIFICATE OF SERVICE**

      I hereby certify that I have served the foregoing pleading titled **UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING AND TO USE CASH COLLATERAL** either through the Court's electronic filing system or by placing a true and correct copy with the United States Postal Service with adequate postage affixed to assure first class delivery and addressed to:

Oconee Regional Health Systems, Inc., et al.
Attention: Steven M. Johnson, Interim CEO
and Authorized Signatory
821 North Cobb Street
Milledgeville, GA 31061

Mark I. Duedall
Leah Fiorenza McNeill
Attorneys for Debtors
Bryan Cave LLP
1201 West Peachtree Street
14th Floor
One Atlantic Center
Atlanta, GA 30309

John D. Elrod
Benjamin R. Keck
Attorneys for the Official Committee of Unsecured Creditors
Greenberg Traurig, LLP
Terminus 200, Suite 2500
3333 Piedmont Road NE
Atlanta, GA  30305

John W. Mills, III
Seyfarth Shaw LLP
1075 Peachtree Street, Suite 2500
Atlanta, GA 30309

Jeffrey C. Wisler
Connolly Gallagher, LLP
1000 West Street, 14th Floor
Wilmington, DE 19801

Ian A. Hammel, Esq.
Eric R. Blythe, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

John A. Thomson, Jr., Esq.
Adams and Reese, LLP
3424 Peachtree Road, NE, Suite 450
Atlanta, GA 30326

Lee B. Hart
Nelson Mullins Riley & Scarborough LLP
201 17th Street, NW, Suite 1700
Atlanta, GA 30363

Ward Stone, Esq.
Matthew S. Cathey, Esq.
G. Daniel Taylor, Esq.
Stone & Baxter, LLP
Suite 800, Fickling & Co. Building
577 Mulberry Street
Macon, GA 31201

David W. Cranshaw, Esq.
Morris, Manning & Martin, LLP
3343 Peachtree Road, NE
1600 Atlanta Financial Center
Atlanta, GA 30326

This 22nd day of May, 2017.

/s/Robert G. Fenimore
Robert G. Fenimore
Trial Attorney
GA Bar No. 205202
robert.g.fenimore@usdoj.gov
440 Martin Luther King Jr. Blvd.
Suite 302
Macon, GA 31201
(478) 752-3545